In re Michael DEVANE.

No. 95–77–MP.

Supreme Court of Rhode Island.

April 5, 1995.

David Curtin, Chief Disciplinary Counsel, for plaintiff.

William Rampone, Providence, for defendant.

## OPINION

PER CURIAM.

This matter is before the court pursuant to article III of the Supreme Court Rules, Disciplinary Procedure for Attorneys, on a decision and recommendation of the Supreme Court Disciplinary Board that the respondent, Michael Devane, be publicly censured. Rule 6(d) of article III provides in part:

"If the Board determines that a proceeding should be * * * concluded by public censure * * * it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The facts as found by the Disciplinary Board (board) are as follows. The respondent was retained by Ronald Desjarlais and his fiancee, Liliana, in August of 1989 to represent Liliana in connection with an application to the Immigration and Naturalization Service (INS) for permanent residency in the United States. At the time of their initial office visit in August, Ronald and Liliana were engaged to be married later that month. Although it is unclear what respondent was told regarding the circumstances of Liliana's entry into the United States, it is undisputed that she entered the country illegally via Mexico.

The respondent provided Ronald and Liliana with a packet of forms for each to complete and return to his office. Subsequent to their marriage on August 26, 1989, the now Mr. and Mrs. Desjarlais returned to respondent's office in September of 1989 with the completed packet of forms that respondent had provided to them. The respondent met with Mr. and Mrs. Desjarlais, reviewed the forms they had completed, and made some minor corrections to the documents. He then informed them that it would take the INS approximately four to six months to review and approve the application for permanent residency.

Within a few months of submitting the forms to respondent in September of 1989, Mr. Desjarlais began calling respondent, seeking information with respect to the status of his wife's application. Mr. Desjarlais left many messages with respondent's secretary or receptionist, and few were returned. When he did speak with respondent, he was informed that the application had been filed with the INS, that it was being processed, and that everything was "going fine."

However, everything was not "going fine" with Mrs. Desjarlais's application. In fact, it was returned by the INS on three separate occasions over a period of fifteen months. The forms were first returned in January of 1990 because a medical form had not been properly submitted. On that occasion the INS returned the application to respondent, who remedied the problem regarding the medical record and resubmitted the application. Mr. and Mrs. Desjarlais were not in-

formed that the application had been returned until May of 1990.

The application was returned by the INS on a second occasion in October of 1990 because it was incomplete. This time, however, the application was returned directly to the Desjarlaises and not to respondent. When they opened the returned application, they discovered two forms that had not been completed by them, that contained inaccurate information with respect to Mrs. Desjarlais's entry into the United States, and that bore forged signatures purporting to be those of Mr. and Mrs. Desjarlais. Those forms were an Application for Permanent Residence, which purports to have been completed and signed by Mrs. Desjarlais, and a Petition for Alien Relative, which purports to have been completed and signed by Mr. Desjarlais.

The respondent promised to correct the problem and resubmit the application to the INS. The Desjarlaises agreed to this course of action. However, when the application was returned by the INS for the third time in December of 1990, they terminated respondent's services and hired other counsel who successfully processed Mrs. Desjarlais's application for permanent residence. They subsequently filed a disciplinary complaint against respondent.

The matter came on for hearings before a disciplinary panel (panel) of the board on January 11, 1994, and May 24, 1994. After hearing testimony and reviewing the forms at issue, the panel concluded that circumstantial evidence clearly demonstrated that respondent did indeed forge or caused to be forged the signatures of the Desjarlaises to the above-noted documents. The panel based its conclusion on the following facts.

First, the evidence is undisputed that the signatures on the forms at issue were not the signatures of the Desjarlaises. The respondent made no effort to rebut the testimony of Mr. and Mrs. Desjarlais that those signatures were not genuine. The respondent also had no explanation concerning how those signatures came to be placed on documents he submitted to the INS.

Second, both the application and the petition were completed in respondent's own handwriting. Inasmuch as the documents were completed in respondent's handwriting and later submitted by him to the INS, no one but he, or someone acting pursuant to his instructions, could have had the opportunity or the motive to forge the Desjarlaises' signatures.

Third, the forged documents are dated January 23, 1990, four months after Mr. and Mrs. Desjarlais had submitted the original packet of forms to respondent. The respondent had no explanation about how or why these documents came to be signed over four months after Mr. and Mrs. Desjarlais had submitted to him the forms he had provided. The panel found it significant not only that respondent had led the Desjarlaises to believe that the INS process would take approximately four to six months but also that Mr. Desjarlais was a persistent client, calling frequently to inquire about the status of his wife's application.

Therefore, the panel concluded that the respondent, rather than admit to his client that the necessary forms had not been properly completed, simply completed the forms himself and either signed or instructed someone in his office to sign the Desjarlaises' signatures and resubmitted them to the INS without his clients' knowledge or approval. Accordingly, the panel determined that the actions of the respondent violated Rule 8.4(c) of the Rules of Professional Conduct.[1] The panel also concluded that the respondent violated Rule 1.4 of the Rules of Professional Conduct as well.[2] The panel's findings of

---

1. Rule 8.4(c) of the Rules of Professional Conduct reads as follows:
   "It is professional misconduct for a lawyer to:
   * * * * * *
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

2. Rule 1.4 of the Rules of Professional Conduct, in pertinent part, provides as follows:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.".

fact and conclusions of law were adopted by the entire board.

This court accepts the findings of fact as approved by the entire board on December 14, 1994. As a result of these findings, the board recommended that a public censure be imposed upon the respondent. The respondent appeared before this court and did not contest the findings of fact made by the board. He also presented matters in further mitigation that had not been presented to the board. The nature of the allegations as proven against the respondent are such that, absent those mitigating facts, this court may have imposed a more severe sanction. However, considering the record and the factors in mitigation, we find that the recommendation of the board is appropriate in the totality of the circumstances of the case and is adopted by the court. Accordingly the respondent is hereby publicly censured.